IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

FOSTER V. FOSTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KATHLEEN A. FOSTER, APPELLANT,

V.

LYLE D. FOSTER, APPELLEE.

Filed October 31, 2023.    No. A-22-873.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed as modified.

Sally A. Rasmussen, of Mattson Ricketts Law Firm, for appellant.

Taylor L. Kidwell and Vanessa J. Gorden, of GordenLaw, L.L.C., for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Kathleen A. Foster appeals from the decree of dissolution entered by the district court for Saunders County, dissolving her marriage to Lyle D. Foster. Kathleen challenges the district court's determination and division of the marital estate in several regards. Kathleen also claims the district court erred in failing to restore her maiden name. We modify the decree to restore Kathleen's maiden name to her. We further modify the decree with regard to the classification and valuation of certain assets and debts, and we modify the amount of equalization payment Lyle is ordered to pay to Kathleen.

- 1 -

## II. STATEMENT OF FACTS

Kathleen and Lyle were married in September 2004. It was the second marriage for both, and no children were born of this marriage. The parties separated, and Kathleen filed a complaint for dissolution in December 2019.

Trial was held before the district court in June and July 2022. The following evidence was adduced.

### 1. RESTORATION OF MAIDEN NAME

Kathleen testified that she was seeking the restoration of her maiden name. She stated and spelled her maiden name for the record and Lyle offered no objection.

### 2. REAL ESTATE

The parties owned, either separately or jointly, 11 pieces of real property and they had debts collateralized against the property. The trial court determined that the Yutan Road property was marital, which neither party disputes on appeal. The court determined that the remaining 10 rental properties were nonmarital assets. The court awarded all of the real estate to Lyle. The court determined that all of the debts associated with all of the real estate was marital debt and assigned it to Lyle. Kathleen asserts that 2 of the rental properties should have been classified as marital property. She also asserts that the debts associated with the remaining 8 rental properties were improperly categorized as marital debts.

### (a) Yutan Road

Four years prior to the marriage, Lyle purchased 39 acres of land on Yutan Road for $136,000. Sometime between the purchase of Yutan Road and the parties' marriage in 2004, Lyle sold off portions of the property. At the time of the marriage, Yutan Road consisted of 21 acres of land. Throughout their marriage the parties constructed several improvements on the property, including a family home (not yet completed at the time of trial), a steel building used for the parties' various small businesses, and a pole barn. After the parties were married, Kathleen was added to the deed. A September 2005 warranty deed listed Lyle and Kathleen as both the grantors and grantees of Yutan Road.

### (b) LDF Homes

Lyle started LDF Homes as a sole proprietorship in 1988, 16 years prior to the parties' marriage. Through LDF Homes, Lyle purchased, renovated, and rented out properties. At the time of the marriage, LDF Homes owned 8 rental properties. Two more were purchased after the date of the marriage. At the time of trial, there were 10 rental properties under LDF Homes. Kathleen does not challenge the trial court's determination that 8 of the rental properties were Lyle's premarital assets; she only challenges the court's determination that the Anderson Way and Cypress Street properties were nonmarital assets, since they were purchased after the parties were married.

## (c) Kathleen's Inheritance

Kathleen inherited farm real estate from her father's estate in 2001. Lyle's name was added to the deeds after the parties' marriage. Kathleen testified that she sold the two sections of inherited farmland and used some of the proceeds from the sales to finance the improvements to Yutan Road. Two seller's closing statements reflect that Kathleen sold a section of inherited farmland for $642,139.52 in 2006, and another section for $678,799.75 in 2007. Kathleen testified that she placed the proceeds from the 2006 sale in certificates of deposit (CDs) and the proceeds from the 2007 sale in a money market account. A First National Bank statement dated March 31, 2007, reflects a deposit of $678,871.51 into a money market account held jointly by Kathleen and Lyle. A handwritten note next to the deposit line-item states, "Sale of Quarter Colon Farm." Kathleen acknowledged that money other than her nonmarital inheritance was deposited into the joint First National Bank account, including Lyle's earnings. With the funds from the money market account, the parties bought several new vehicles, and a small amount went into another CD. Kathleen testified, "after that there were other purchases, and I'm not sure where [the remainder of the money] really went." Kathleen indicated that "some of it" went into more improvements for LDF Homes properties.

No documentary evidence related to the proceeds of the 2006 sale and corresponding CDs was offered at trial. Kathleen testified that the parties had almost $1,000,000 in CDs and that they later had the CDs "broken up" to purchase three more CDs for $250,000 each. According to Kathleen, a remainder of $200,000 from the original CDs paid off Yutan Road's construction loan for the home, the steel building, and the pole barn. In roughly 2008, the parties moved money from their remaining three CDs into an E-Trade account. Kathleen was unable to recall the initial amount in the E-Trade account, but checks written from the account by both Lyle and Kathleen from May 2009 to February 2014, totaled over $265,000.

## (d) Real Estate Valuation

Lyle hired a real estate agent in November 2021 to perform a market analysis for each of the parties' properties. The real estate agent testified that she physically inspected each property and gave a fair market valuation based on the property's present condition. The real estate agent conceded that she did not have any certifications in real estate appraisals. The district court received the market analysis into evidence and indicated that it would give the exhibit the appropriate weight as to the agent's opinion.

The market analysis, dated December 2, 2021, stated that Yutan Road had a fair market value of $400,000. The market analysis also noted that if Yutan Road were to be placed on the market in its current condition, there would be significant resistance to finding a buyer due to "the house continuing to sit unfinished for 14+ years, with no utilities to the property, along with deterioration of the 3-sided machine shed building."

## (e) Real Estate Mortgages

Both the joint property statement and the mortgage balance statement reflect that there were mortgages on all 10 of the LDF Homes properties. Cross referencing the loan numbers listed in the parties' joint property statement with the mortgage balance statement for the parties'

properties demonstrates that the parties owed $678,518.13 in mortgages on the 10 LDF Homes properties.

The parties' joint property statement also lists loan number 39101, for $32,208.46, and number 39158, for $55,050, as operating notes. Lyle explained that the operating notes attached to Yutan Road, as well as to all properties Lyle owned. The total mortgage and operating note debt was $765,776.59.

According to the parties' joint property statement and the mortgage balance statement, Yutan Road did not have a mortgage at the time of trial. The only debt associated with Yutan Road are the two operating notes.

### (f) Anderson Way Property

Kathleen provided no testimony regarding the property at Anderson Way at trial, however, in a previous deposition received in evidence at trial, Kathleen testified that Anderson Way was purchased by the parties in 2018. The down payment for Anderson Way was made through an operating note from the bank and Anderson Way's mortgage now had its own separate note. Kathleen testified that LDF Homes paid Anderson Way's mortgage.

Lyle did not testify that Anderson Way was nonmarital property. He testified only that he had hired the real estate agent to conduct a market analysis of the property. The agent's market analysis shows that Anderson Way was presently valued at $35,000 to $40,000, as the home is currently uninhabitable and there would be significant resistance to finding a buyer in its current state. The agent testified that if Anderson Way were to be refurbished, it could be sold for a price between $155,000 and $160,000.

The joint property statement noted that Anderson Way was "deeded joint ownership, Lyle and Kathleen." The mortgage balance statement includes a $70,000 debt for loan number 38759, which is tied to this property according to the parties' joint property statement.

### (g) Cypress Street Property

Kathleen provided no trial testimony regarding the property at Cypress Street, however, in a previous deposition received in evidence at trial, Kathleen testified that Cypress Street was purchased after the parties were married, though she was unable to recall the source of the property's down payment. Kathleen conceded that the deed to Cypress Street listed only Lyle's name and, because she had trusted Lyle, she had not insisted that the property be titled in her name as well.

The joint property statement reflects that Cypress Street was purchased on October 25, 2004, roughly 1 month after the parties' marriage. At trial, Lyle disagreed that Cypress Street was a marital asset because he had signed the closing statement before the marriage, had planned for the purchase of Cypress Street for "months and years," and was the only person listed on the deed for Cypress Street.

The agent's market analysis shows that Cypress Street was valued at $40,000 to $45,000 in its present condition. The market analysis again noted that the home is currently uninhabitable and there would likely be significant resistance in finding a qualified buyer. The mortgage balance statement shows a $74,330.69 debt for loan number 37410, which the parties attributed to this property in the joint property statement.

(h) Real Estate Taxes

The parties separated in November 2019. At the time of trial in the summer of 2022, property taxes on 10 of the parties' properties were in arrears. Tax sale redemption quotes, dated June 9, 2022, showed that the property taxes for nine LDF Homes' properties in Saunders County and the Yutan Road property had become delinquent in March 2021, and detailed the amount still owed in property taxes. No evidence as to the status of the property taxes on the LDF Homes property in Dodge County was offered. By the time of trial, the total property tax liability for the 10 properties was $88,986.29.

At trial, Lyle conceded that the LDF Homes' rentals were not generating sufficient income to pay the property tax because "they're so run down I've got half of them empty. And before [Kathleen] left, most of them were full."

### 3. LIFE INSURANCE AND RETIREMENT ACCOUNTS

Kathleen's column of the joint property statement lists her whole life insurance policy through Assurity at a value of $6,920, her Roth IRA through State Bank of Colon at a value of $1,452, and her Roth IRA through Hartford Funds at a value of $7,086. Lyle's column of the joint property statement values the whole life insurance policy, and the State Bank of Colon's Roth IRA as Kathleen does but values the Hartford Funds Roth IRA at $7,612. The joint property statement also notes that Kathleen did not produce any statements related to her two Roth IRA accounts during discovery but listed the value of her Hartford Funds Roth IRA as $7,612 in answers to interrogatories on July 30, 2020, and May 15, 2021.

The joint property statement additionally lists Kathleen's assets on the date of the parties' marriage, including a whole life insurance policy through Woodman valued at $3,500 (with the same policy number as the whole life policy later held by Assurity), the Colon Roth IRA valued at $1,500, and the Hartford Roth IRA valued at $5,000.

Kathleen provided no testimony regarding her life insurance policy or retirement accounts. Lyle testified that the parties did not take out life insurance policies or contribute to retirement accounts during their marriage. When Lyle was asked whether he saw any statements related to Kathleen's Hartford Funds Roth IRA he stated, "I have no clue."

### 4. MISCELLANEOUS ITEMS

(a) Credit Card Debt

During the marriage, Lyle and Kathleen established joint accounts at US Bank. Kathleen testified that during the marriage, money from the parties' US Bank joint checking account was used to pay their Visa bills. Lyle testified that he paid off the $13,000 balance on the parties' US Bank Visa with marital funds around the time of his separation from Kathleen. Lyle stated that "I transferred everything we had into the checking account and paid off the Visa bill, and the only reason I knew to do that was because. . . we made sure we paid everything and closed everything that was in our joint names." This credit card payment of $13,648 is reflected in the joint property statement.

### (b) Bale Spear

After the parties separated, but before trial, Lyle sold a bale spear for $1,500. In the joint property statement, Kathleen placed a value of $500 on the bale spear and Lyle placed a value of $0, noting that the bale spear "no longer exists"; Lyle indicated that this item was sold for $1,500 during the divorce action and that the gear drive pump on it was bad. Neither party testified regarding the bale spear at trial.

### (c) Ford F350 Truck

In the joint property statement, Kathleen valued a Ford F350 Truck at $18,975, and Lyle valued it at $6,000. At trial, Lyle testified that he took into consideration that the truck had a bad transmission which he estimated would cost $7,200 to repair.

### (d) Gooseneck Trailer

Lyle testified that after the parties separated, he bought a gooseneck dump trailer for $4,000 using an operating note in both his and Kathleen's names. At the time of trial, Lyle had repaid some of the operating note amount and had continued "putting it back ever since."

### 5. DECREE AND POSTTRIAL PROCEEDINGS

The district court entered a decree of dissolution of marriage on August 24, 2022. The decree did not address Kathleen's request made at trial to have her maiden name restored. The court identified the 10 LDF Homes properties as nonmarital property and Yutan Road as marital property and awarded all 11 properties to Lyle. The court also classified all the properties' debt, both mortgages and property taxes, as marital and ordered Lyle to pay the properties' debts and refinance all loans to release Kathleen from any obligation. The court made other findings with regard to personal property, vehicles, and accounts. We note that the trial court utilized Lyle's valuations for most items, finding that in some instances, Kathleen used replacement cost or purchase price rather than fair market value. The court also indicated that "it believes [Lyle's] testimony" regarding the values of certain items on the property statement.

The district court gave Lyle credit for paying the joint US Bank Visa balance of $13,648. The district court awarded Kathleen a subtotal of $55,849 of the marital estate and Lyle a subtotal of $77,780, which the court later reduced to $64,132 after crediting Lyle for the credit card payment. Lyle was then ordered to make a $4,141.50 equalization payment to Kathleen so that each was awarded an equal $59,990.50 of the marital estate. Additional findings and details of the dissolution decree will be set forth in our analysis section below.

On September 2, 2022, Lyle filed a motion to clarify or amend, seeking to amend the decree to include a provision for the return of specific sentimental items allegedly in Kathleen's possession.

On September 6, 2022, Kathleen, pro se, filed a motion to clarify or amend the decree to "dispute the property allocation" and to restore her maiden name. The same day, Kathleen, through trial counsel, filed a motion to alter or amend, seeking the same remedies as her earlier motion to clarify or amend.

On October 28, 2022, the district court filed an order dismissing both Lyle's and Kathleen's posttrial motions. The court noted that the motions were scheduled for hearing on October 24, but

both parties had contacted the court's bailiff the day of the scheduled hearing and stated that they were jointly moving to continue the hearing on both motions and obtain a new hearing date. However, no motion to continue was filed. Thus, the court dismissed Lyle's motion to clarify or amend and Kathleen's motion to alter or amend as the motions were not argued on the date they were set for hearing, nor was the hearing properly continued. Both parties were given leave to refile their respective motions, however, no further motions were filed. We considered the district court's dismissal of the motions as a denial, after which Kathleen perfected this appeal.

## III. ASSIGNMENTS OF ERROR

Kathleen assigns, restated, that the district erred in (1) failing to restore her maiden name; (2) finding that she had not met her burden of proof in tracing her premarital inheritance to the equity in Yutan Road; (3) failing to include Anderson Way and Cypress Street in the marital estate; (4) including the premarital value of her life insurance policy and retirement accounts in the marital estate; (5) findings as to the classification and assignment of debt; and (6) division as to the bale spear, Ford F350, and gooseneck trailer.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.*

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. FAILURE TO RESTORE MAIDEN NAME

Kathleen argues that the district court's failure to restore her maiden name in the decree or in posttrial proceedings was an oversight that amounts to a judicial abuse of discretion.

Neb. Rev. Stat. § 42-380(1) (Reissue 2016) states that when a pleading is filed pursuant to a complaint for dissolution of marriage, either party may include a request to restore his or her former name. See § 42-380(1). The court shall grant such request except for good cause shown. *Id.* In this case, Kathleen's complaint did not specifically request the restoration of her maiden name, although her prayer for relief included "such other and further relief as the Court deems just and equitable." At trial, Kathleen testified to her desire to have her maiden name restored to her and provided the court with the desired name.

Even when a party does not move to amend pleadings, a court *may* constructively amend pleadings on unpleaded issues in order to render a decision consistent with the trial. See *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022) (emphasis added). Lyle did not object to the request

to restore Kathleen's maiden name at trial and as such, the court could have amended the pleadings to conform to the evidence. See Neb. Ct. R. Pldg. § 6–1115(b).

Under the circumstances of this case, we find that Kathleen's request for restoration of her maiden name should have been granted and we therefore modify the decree to provide that Kathleen's maiden name of Auch be restored to her.

### 2. EQUITABLE DIVISION OF PROPERTY

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. And the third step is to calculate and divide the net marital estate equitably between the parties. *Id*. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020).

### (a) Yutan Road

Kathleen asserts that the marital equity in Yutan Road should be offset by her $200,000 contribution of nonmarital funds. Kathleen concedes that she did not trace monies from the E-Trade account to specific assets and purchases. However, she argues that her testimony, that $200,000 of proceeds from the sale of inherited farmland satisfied a construction lien on Yutan Road, combined with her documentary evidence, showing that there was once a deposit of at least $265,000 into the E-Trade account and $678,871.51 into the joint money market account, is sufficient to satisfy her burden of tracing nonmarital funds to the equity in Yutan Road.

Before addressing this assignment of error, we summarize the applicable law regarding the classification of property. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. See *id*. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Id*. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id*.

Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). The original capital or value of an asset may be nonmarital, while all or some portion of the earnings or appreciation of that asset may be marital. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020) (quoting *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017)). The burden of proof rests with the party claiming that property is nonmarital. *Kauk v. Kauk, supra*.

In its decree, the district court found that Yutan Road was acquired by Lyle prior to marriage, however, it determined that improvements were made during the marriage and the appreciation of the property is subject to marital division. The court found that Kathleen failed to

- 8 -

trace separate property contributions to the improvements of the real estate and that Kathleen's nonmarital funds have long since been comingled with marital funds and are not traceable as separate property. The court found that Lyle also failed to establish the value of his separate share of the property as of the date of marriage to be off set to him. The court valued the Yutan Road property at $400,000, with debt against it of $55,050.

The district court did not abuse its discretion in determining that Kathleen failed to trace the $200,000 of nonmarital money she alleges funded improvements to Yutan Road and that any such funds had been comingled with marital assets. Kathleen did provide documentation that the proceeds from the 2007 sale of inherited farmland were deposited into a money market account, however, that money market account was jointly held and used during the marriage by both parties to deposit marital monies and pay marital bills. No receipts related to the construction of the home, the steel building, and the pole barn on Yutan Road were offered into evidence, nor any records related to the amount of the construction lien or the date of its satisfaction.

Kathleen testified that the construction lien was paid for by funds which were in her original CD from the 2006 sale of inherited property. However, these funds were later moved into new CDs, and then later moved into the E-Trade account. No documentation related to any CD account for these alleged transactions was offered at trial. While Kathleen offered copies of checks drawn from the E-Trade account, Kathleen testified that the construction lien was paid off before the money was moved into the E-Trade account.

We recognize that documentation is not always required to support claims of nonmarital property. See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019) (finding that party seeking classification of property in dissolution proceeding may find it easier to meet burden of persuasion with documentary support, but its absence does not automatically defeat claim). However, under the circumstances in this case, we cannot say that the district court erred in finding that Kathleen failed in her burden of tracing her premarital inheritance to the improvements to Yutan Road. Our review of Kathleen's testimony regarding the attempt to trace her premarital inheritance shows that it was vague, confusing, and unpersuasive.

Further, we agree with the district court that any nonmarital inheritance that was ultimately deposited into the money market or E-Trade accounts has become inextricably mixed with marital property. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Eis v. Eis*, 310 Neb. 243, 965 N.W.2d 19 (2021). The evidence shows that the money market account was a joint account and both parties made an unknown number of withdrawals and deposits into the account, including depositing Lyle's earnings. Both Kathleen and Lyle were also able to write checks out of the E-Trade account, demonstrating that they each had access to the account.

Kathleen has failed to carry her burden of proof to trace any premarital contributions to the improvements of Yutan Road. The district court did not abuse its discretion in finding that Kathleen's premarital funds had been comingled and including Yutan Road's appreciation in the marital estate. This assignment of error fails.

(b) Anderson Way and Cypress Street

Kathleen asserts that the district court erred in failing to include Anderson Way and Cypress Street in the marital estate. She argues that the two pieces of real estate were acquired during the marriage and thus are marital property.

The district court found in the decree that except for Yutan Road, Lyle had satisfied his burden of proof related to his claim that all other real estate was nonmarital property. Further, the court found that Kathleen did not prove that these properties increased in value during the marriage. The court noted that there was nothing in the record that proves what the premarital real estate was worth in 2004. The court further found that the value of the real estate is less than the debt associated with that real estate and that the active appreciation rule does not apply. The district court then awarded all rental properties, including Anderson Way and Cypress Street, to Lyle.

As Kathleen notes in her brief, no deeds, original notes, original mortgages, closing documents, down payments, rental histories, amortization schedules, or other records related to either property, were offered into evidence. Only general information regarding the present loan amount on each property was offered and required cross referencing with the parties' joint property statement in order to match loan numbers with specific pieces of property. Without any documentary evidence offered by either party, the district court had to rely on the parties' testimony in order to classify the two rental properties at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

Lyle testified that he signed the closing statement for Cypress Street prior to his marriage with Kathleen and had been contemplating the purchase of the property some time in advance. Lyle also noted that he was the only person on the deed for Cypress Street. On the other hand, the record shows that the Anderson Way property was purchased in 2018 and the joint property statement indicates that it is jointly held.

We cannot say that the district court abused its discretion in determining that the Cypress Street property should be classified as Lyle's nonmarital assets. However, we do find an abuse of discretion in failing to classify the Anderson Way property as marital property because it was purchased during the marriage and titled jointly in the parties' names.

(c) Life Insurance Policy and Retirement Accounts

The district court awarded Kathleen her whole life insurance policy and retirement accounts, which it valued at $15,984. Kathleen asserts that the district court erred in including the premarital value of her whole life insurance policy and two retirement accounts in the marital estate. Kathleen points to the parties' joint property statement where Lyle's column lists the combined value of the assets at the time of trial as $15,984, and Kathleen's column as $15,458. Both Lyle and Kathleen list the assets' premarital value as $10,000. Kathleen argues that only the appreciation, rather than the total value of the assets, should have been included in the marital estate.

Under Neb. Rev. Stat. § 42-366(8) (Reissue 2016), the general rule is that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are

not assets of the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016). Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate. *Id*.

Kathleen did not provide any specific testimony regarding these accounts and did not offer any documentary evidence to show the source of the premarital funds in the accounts. However, she generally testified that her information on the property statement was accurate. On the parties' joint property statement, both Kathleen and Lyle listed the premarital and present value of the assets as set forth above, with a difference in present value of $526. Lyle testified that he was generally unaware of any retirement accounts held by Kathleen. Because both parties listed the premarital value of these accounts, we conclude that the district court abused its discretion by including the total value of her whole life insurance policy and two retirement accounts in the marital estate. We modify the division of property to value the marital portion of these accounts at $5,894.

(d) Classification and Assignment of Debt

Kathleen next asserts that the district court erred in its assignment of various debts. Kathleen argues that the debts against the LDF Homes properties, awarded to Lyle as nonmarital assets, should likewise have been assigned as nonmarital debts rather than included in the marital estate. She contends that Lyle refinanced all mortgages prior to the parties' marriage, and that the overdue property taxes accrued after the date of the parties' separation. Kathleen also argues that by comingling the equity of Yutan Road, included in the marital estate, with the debt associated with Lyle's nonmarital properties, the district court "zeroed out" Yutan Road's equity when the equity should have been distributed as a marital asset. Kathleen finally argues that Lyle should not have been credited with paying off the parties' joint credit card bill in the equalization calculation as he did so with marital funds.

Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The burden to show that a debt is nonmarital is on the party making that assertion. *Id*.

As noted above, the district court found that the value of the real estate, except for the Yutan Road property, was less than the debt associated with that real estate. The district court found that there was no appreciation of the investment properties during the marriage, rather there was depreciation. The court noted Kathleen's claim that she contributed to the rental properties, both financially and through her own efforts. The court concluded that both parties took the risk of financial gain and loss together and thus it would not be equitable to assign all the debt associated with the rental properties to Lyle and award an equal share of the appreciation of Yutan Road to Kathleen.

Using the highest end of the real estate agent's market analysis range on all 11 pieces of the parties' property (Yutan Road and all 10 of the LDF Homes properties), the district court found the total value of the real estate to be $850,000 and the total cross collateralized debt to be $765,776.59, with the net equity of the real estate being $84,224. After factoring in the $88,986.29 in overdue property taxes, the district court concluded that there was no equity in the real property. The court awarded all of the real estate to Lyle and required him to refinance all of the loans on

the real property, releasing Kathleen from any obligation thereon, within 1 year of the entry of the decree. The court also ordered Lyle to be responsible for all tax liability existing on each property.

Upon our de novo review of the record, we find that the district court abused its discretion by classifying the debt against Lyle's nonmarital rental properties as marital debt. The record shows that Lyle had debt against the 8 rental properties (not including Anderson Way and Cypress Street) at the time of the parties' marriage. While additional debt was accrued during the marriage, and the income from the rental properties was used to pay the debt, the fact remains that the rental properties, with a total value of $450,000, were awarded to Lyle as nonmarital assets. As such, these assets did not provide a joint benefit to the parties. We conclude that, with the exception of Anderson Way, characterizing the debts against the rental properties as marital was error and these debts should be classified as nonmarital debts.

The district court noted in the decree that it used the trial date for the balances of the mortgage debts because the first temporary order required Kathleen to collect rent and pay the various properties' debts. According to the court, a subsequent temporary order required each party, for a time, to be responsible for any pay-down in mortgage principal. We find no abuse of discretion in the district court's reasoning regarding the date selected for the mortgage debt balances. As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016). The purpose of assigning a date of valuation in a dissolution decree is to ensure that the marital estate is equitably divided. *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019).

Likewise, we conclude that the existing tax liability on all the rental properties, apart from Anderson Way, should be assigned to Lyle as nonmarital debt for the same reasons found above.

Regarding the parties' joint credit card debt, the district court gave Lyle credit for paying the US Bank Visa balance of $13,648. However, Lyle testified to paying off the parties' US Bank Visa with marital funds from the parties' jointly held US Bank checking account at the time of the parties' separation. Because Lyle used marital funds to pay the credit card, we find that the district court erred in giving Lyle credit for this payment in the equalization calculation.

We conclude that the district court abused its discretion in classifying the mortgage debts and back taxes as marital, except with respect to the Yutan Road and Anderson Way properties. These debts, totaling $640,726.59 in mortgage debts and $64,598.07 in back taxes, should have been assigned to Lyle as nonmarital debts. In addition, Lyle should not have received a credit of $13,648 for payment of the credit card debt.

(e) Division of Miscellaneous Items

*(i) Bale Spear*

Kathleen asserts that the district court erred in failing to allocate Lyle the proceeds of the sale of a marital bale spear.

The district court did not make any findings regarding the bale spear in its decree. Neither Lyle nor Kathleen testified regarding the bale spear at trial and the only evidence regarding its sale is a notation on the joint property statement that Lyle sold the bale spear for $1,500 during the pendency of the dissolution proceedings. Based on the lack of evidence regarding the bale spear,

we cannot say that the district court abused its discretion by failing to allocate the proceeds of its alleged sale to Lyle.

### (ii) Ford F350 Truck

Kathleen next asserts that Lyle admitted at trial that the value of the Ford F350 truck should be $11,775 instead of the $6,000 value he placed on the truck in the joint property statement.

In the decree, the district court awarded the vehicles to the respective party in possession. The district court noted the values placed on the vehicles by both Kathleen and Lyle in their joint property statement and concluded that the vehicles awarded to each party were approximately equal in value, and thus no equalization related to the vehicles was necessary.

The district court did not make any specific findings as to the value of the parties' vehicles, only noting that the distribution of the parties' vehicles was generally equitable. We cannot say that the district court's reliance on the parties' joint property statement and equitable distribution of vehicles was an abuse of discretion.

### (iii) Gooseneck Trailer

Finally, Kathleen asserts that the district court erred by including the full amount of the operating note in the marital estate after Lyle testified to using $4,000 of the operating note to purchase a gooseneck trailer, which the district court awarded to Lyle.

In the decree the district court included the gooseneck trailer in its award of vehicles to the party in possession. The district court again relied on the values assigned by the parties in their joint property statement to the gooseneck trailer. At trial, Lyle testified that after the separation he had continued paying back $4,000 he had taken from the operating note with his own funds. Based on this evidence, we cannot say that the district court abused its discretion to classify the full amount of the operating note as marital debt.

### (f) Effect of Findings on Equalization

As discussed above, we find that Anderson Way, subject to the property's mortgage debt and back taxes, should be classified as marital property; the remaining debt and back taxes on the 9 other rental properties should be classified as Lyle's nonmarital property. Lyle is not entitled to credit for payment of the parties' joint credit card debt since that was done with marital funds. We also determine that the marital value of Kathleen's life insurance and IRAs is $5,984. We modify the trial court's division of marital assets and debts as follows:

| Assets | Kathleen's Award | Lyle's Award |
|---|---|---|
| Yutan Road | | $400,000 |
| 20 Anderson Way | | $40,000 |
| Household & Personal | $26,865 | $6,265 |
| Farm & Business Equipment | $13,000 | $71,515 |
| Motor Vehicles | (roughly equal) | (roughly equal) |
| Insurance & Retirement | $5,984 | |
| Subtotal of Assets: | $45,714 | $517,780 |

- 13 -

Debts

| | | |
|---|---|---|
| Yutan operating notes | | $55,050 |
| Yutan taxes | | $16,452 |
| Anderson Way Mortgage | | $70,000 |
| Anderson Way Taxes | | $6,730 |
| Subtotal of Debts: | | $148,232 |
| | | |
| Net Award: | $45,714 | $369,548 |
| Equalization: | $161,917 | ($161,917) |

We modify the decree to provide that Lyle shall pay Kathleen the sum of $161,917 to equalize the marital estate within 120 days of the of the entry of the mandate on this opinion. All other provisions of the decree relating to property and debt division remain as ordered in the decree.

## VI. CONCLUSION

We modify the decree of dissolution to provide that Kathleen's maiden name of Auch be restored to her. We further modify the decree to find that the Anderson Way real estate is marital property, that the debt and taxes owed on the remaining nine rental properties under LDF Homes is nonmarital debt, that Lyle is not entitled to credit for payment of the credit card debt, and that the marital value of Kathleen's life insurance and retirement accounts is $5,984. As a result of these findings, we modify the decree to order Lyle to pay Kathleen the sum of $161,917 as property equalization within 120 days of the entry of the mandate on this opinion. The decree is affirmed in all other respects.

AFFIRMED AS MODIFIED.